UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER J. BRADLEY,

     Plaintiff,

v.                              Case No. 3:21cv408-MCR-HTC

THE SCHOOL BOARD OFFICE OF
OKALOOSA COUNTY FLORIDA,
et al.,

     Defendants.
_____/

### ORDER and
### REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Christopher J. Bradley's *pro se* amended complaint (ECF Doc. 5) seeking to assert claims pursuant to 42 U.S.C. § 1983. The matter was referred to the undersigned for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2 (E). For the reasons discussed below, the undersigned respectfully recommends this action be DISMISSED as frivolous. Notably, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and are not cognizable under section 1983.

Additionally, because the undersigned finds Plaintiff's amended complaint to be frivolous, Plaintiff's motion to proceed *in forma pauperis* is DENIED.

## I.    THE AMENDED COMPLAINT[1]

Plaintiff brings this action against eleven (11) defendants: (1) The School Board of Okaloosa County ("The School Board"); (2) Marcus Chambers, the Superintendent of the Okaloosa County School District; (3) Charlie Marello, the principal of Niceville High School ("Niceville H.S."); (4) Daniel Wooten, the band director at Niceville H.S.; (5) Deborah Murphy, the guidance counselor at Niceville H.S.; (6) Mary Polson, a judge in the First Judicial Circuit Court of Florida; (7) John Ledbetter, an attorney; (8) AFS-USA, Inc., a nonprofit organization; (9) Rebecca Horst, Plaintiff's ex-wife; (10) Marc Stanley, Defendant Horst's second ex-husband; and (11) Adam Nixon, Defendant Horst's third ex-husband.  ECF Doc. 5 at 1–5.

The crux of the amended complaint is that the named Defendants "contributed to the achievement of Defendant Horst's goal of depriving [Plaintiff] of the fundamental human right to maintain a parent-child relationship" with Plaintiff's daughter, "A.D.B.," who is now a nineteen-year-old adult.  *Id.* at 7.  To support this allegation, Plaintiff complains mostly of (1) adverse rulings in a state court domestic relations matter that was closed in 2019, (2) A.D.B.'s participation in an international exchange student program, and (3) decisions made by Niceville H.S. employees who refused—based on district policy—to help Plaintiff resolve a

---

[1] Plaintiff's initial complaint was fifty-two (52) pages long and, thus, was not compliant with the Court's Local Rules.  Plaintiff was directed to amend his complaint, and he did so.

familial dispute pertaining to A.D.B.'s refusal to speak to Plaintiff. ECF Doc. 5. The following allegations are accepted as true for the purpose of this order and report and recommendation.[2]

Plaintiff and Defendant Horst married in 1996, and A.D.B. was born in August 2001. *Id.* After Plaintiff and Defendant Horst divorced in 2011, they agreed to a time-sharing arrangement, "as contemplated if the parents lived over 100 miles apart," because Defendant Horst was living in Texas, and Plaintiff moved to New York. *Id.* In 2012, Defendant Horst relocated Florida, and within six (6) months, she "recruited Defendant Ledbetter," an attorney, to file a "Verified Petition to Domesticate and Modify (their Texas) Decree of Divorce and Timesharing." *Id.* at 6–7 (internal marks omitted). The petition contained allegations that Defendants Horst and Ledbetter "never even attempted to prove in Court. Plaintiff Bradley was engaged in a campaign of Parental Alienation against Defendant Horst.[3]" *Id.* In April 2013, "the clerk entered Defendant Ledbetter's Motion for Default Judgment into the record." *Id.* at 8.

Plaintiff complains that, prior to Defendants Ledbetter's initiation of the "matter," Defendant Horst never "picked up the phone when Plaintiff called to speak with their daughter and ask why [Plaintiff] hadn't replied." *Id.* Plaintiff also asserts

---

[2] Although the undersigned accepts Plaintiff's allegations as true in this instance, the undersigned notes Plaintiff did not affirm the allegations in the amended complaint under the penalty of perjury.
[3] The Court presumes this was an allegation Defendant Horst made against Bradley in the petition.

nobody suggested he was a danger to A.D.B. and service of process in the matter "was questionable." *Id.* Plaintiff told Defendant Horst he would move to Florida so that A.D.B. would not have to move to New York, but Defendant Ledbetter filed a second motion, in a case before Defendant Judge Polson, to make Defendant Stanley a joint managing conservator so that A.D.B. could live with Defendant Stanley while Defendant Horst was deployed for her military service. *Id.* at 9.

Judge Polson granted the motion in September 2014 and "forced the temporary sharing of custody" with Defendant Stanley, at which point Plaintiff asserts Judge Polson "joined the group that sought to further Defendant Horst's goal of interfering with Plaintiff Bradley's parent-child relationship." *Id.* Plaintiff asserts, "Despite the motions for contempt[,] . . . the Texas time-sharing agreement was never enforced" by Judge Polson, and the timesharing of A.D.B. was thus "erratic" when Defendant Horst was not deployed. However, the temporary custody sharing arrangement approved by Judge Polson was "mostly followed" when Defendant Horst was deployed and Defendant Stanley was facilitating the timesharing. *Id.* at 8–9.

Defendants Horst and Stanley subsequently divorced, and Plaintiff's relationship with A.D.B. was "steadily eroding," as "Defendant Horst was ready to cause drama and makeup [sic] reasons not to allow time-sharing planned as often as she could." *Id.* at 10. Plaintiff called the Okaloosa County Sheriff's Office at least

once and was advised that the Sheriff's Office has a policy of not intervening in "that type of domestic dispute until it turns criminal." *Id.*

Eventually, Plaintiff moved from New York to a location in Fort Walton Beach, Florida, which was about twelve (12) miles from A.D.B. and her school. *Id.* Subsequently, Plaintiff moved to Niceville, Florida to be even closer to A.D.B. In August 2016, Plaintiff informed Defendant Horst that he moved to Niceville and intended to visit A.D.B.'s band practice, scheduled a meeting with A.D.B.'s guidance counselor, and planned to volunteer at Niceville H.S. *Id.* at 11. Defendant Horst called Plaintiff and cursed at him, telling him A.D.B. did not want Plaintiff around. *Id.* Defendant Horst also told Plaintiff she would "alert the band that the practice should be closed[,] and it was closed to him." *Id.*

Plaintiff then met with Niceville H.S.'s guidance counselor, Defendant Murphy, who told Plaintiff she could not help him due to district policy and the scope of Defendant Murphy's job. *Id.* at 12. In December 2016, Plaintiff emailed Niceville H.S.'s band director, Defendant Wooten, and "asked for assistance in figuring out why his 15-year-old child would not talk to him," but Defendant Wooten declined to help Plaintiff, citing school district policy. *Id.*

On Christmas 2016, after being ignored by Defendant Horst for several days, Plaintiff went to Defendant Horst's house with gifts for A.D.B., and Plaintiff was greeted by Defendant Nixon, who explained that he lived at the house and Defendant

Horst and A.D.B. were not home at the moment, but Defendant Nixon did not disclose A.D.B.'s location. *Id.* at 13. Plaintiff alleges Defendant Nixon "aided in hiding [Plaintiff's] child from him on Christmas day." *Id.*

A few days later, Plaintiff emailed Niceville H.S.'s principal, Defendant Marello, and asked for assistance regarding A.D.B.'s desire to not communicate with Plaintiff, but Defendant Marello told Plaintiff that his "hands are tied by district policy." *Id.* at 13–14. Defendant Marello indicated the policy came from the School Board or Superintendent, but Plaintiff was never provided a copy of the policy despite requesting one. *Id.* at 14.

In January 2017, Plaintiff filed a motion for contempt relating to his time-sharing agreement with Defendant Horst, for which Judge Polson set a May 2017 hearing. *Id.* at 14. Around the same time in January 2017, Plaintiff received an email "allegedly from his child," which explained she needed his approval to spend her junior year of high school in Belgium as an exchange student through Defendant AFS-USA. *Id.* Subsequently, Defendant Ledbetter filed a motion to authorize permission for A.D.B. to participate in the exchange program. *Id.* From Plaintiff's understanding, AFS-USA told Defendant Horst a court order would be necessary for A.D.B. to be admitted to the program. *Id.* at 17.

Judge Polson held a hearing on the motion to authorize permission in March 2017, in which Plaintiff was allowed to argue his position, and on the same day as

the hearing, Judge Polson granted the motion, allowing A.D.B. to participate in the program, and ordered Plaintiff to take A.D.B. to dinner every Monday night until A.D.B.'s departure for Belgium in August 2017. *Id.* at 14–15. Judge Polson also denied Plaintiff's "oral motion" to have A.D.B. evaluated for attachment-based parental alienation ("AB-PA"). One week later, Judge Polson denied Plaintiff's motion for a rehearing. *Id.*

Plaintiff then sought information from Defendant Marello as to how and why the School Board or the Superintendent approved A.D.B.'s participation in the exchange program, which Plaintiff describes as "foster care in a foreign country," *Id.* at 17, even though academic credit would not be provided. *Id.* Plaintiff informed Defendants Marello and AFS-USA that he objected to A.D.B.'s participation in the program and that A.D.B. was a victim of AB-PA, which the program would only exasperate. *Id.* at 15–16.

In June 2017, Plaintiff filed a motion for contempt because Defendants Horst and Nixon took A.D.B. out of Florida and told Plaintiff they would be gone for at least a month. *Id.* at 16. Judge Polson denied the motion because Defendant Horst thought A.D.B. had told Plaintiff about the trip; however, because of the trip, Judge Polson determined "Plaintiff Bradley had 5 weeks of Monday night dinners to make up with A.D.B." *Id.*

After A.D.B. returned from her exchange program in Belgium, she lived and attended school within five (5) miles of Plaintiff; however, Defendant Horst denied Plaintiff any opportunity to share time with A.D.B., except for a two-hour lunch. *Id.* at 17. During A.D.B.'s senior year, Plaintiff filed four (4) motions for contempt, but Judge Polson "continued to allow Defendant Horst authority to interfere with [Plaintiff's] parent-child relationship as she pleased." *Id.* During the last hearing in September 2019, Plaintiff alleges Judge Polson acknowledged that a motion to modify Plaintiff's parental rights did not exist, but she "'just said I'm not going to enforce it' based on hearsay testimony . . . ." *Id.* Plaintiff argues Judge Polson "decide[d] of her own accord not to enforce [Plaintiff's parental] rights . . . ." *Id.*

Plaintiff asserts Defendant Horst "enlisted the help of Defendant[s] Stanley and Nixon and AFS-USA," with the assistance of the School Board, to "manipulate[] the attachment system of [Plaintiff's] daughter so that she would reject him as a parent . . . ." *Id.* at 18.

Based on these allegations, Plaintiff attempts to assert three (3) claims, all of which are based on "violation[s] of 42 U.S.C. § 1983 & the 14th Amendment." *Id.* at 18–22. Plaintiff brings Count 1 against Defendants Horst, Ledbetter, Polson, Stanley, Nixon, and AFS-USA for "interference with parent-child relationship"; Count 2 against all Defendants for "reckless or deliberately indifferent or oppressive conduct that causes emotional or psychological harm"; and Count 3 against

Defendants Chambers, Marello, Wooton, Murphy, and the School Board for "deprivation of right to equal protection" based on Plaintiff's membership in "an identifiable class of divorced[,] male parents of minor children" and Defendants' refusal to assist with his custody and familial issues. *Id.* For relief, Plaintiff seeks compensatory damages, which plaintiff estimates are "$1,000,000.00 or more," punitive damages, interest, and costs. *Id.* at 22–23.

## II.    DISCUSSION

District courts have "'unquestionable' authority to control their own dockets. This authority includes 'broad discretion in deciding how best to manage the cases before them.'" *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (citations omitted). Thus, a district court may *sua sponte* dismiss a *pro se* litigant's complaint, where the plaintiff cannot cure the defects by amending his complaint, or an amendment would be futile. *See Horn v. Estate of Camacho*, 817 F. App'x 872, 874 (11th Cir. 2020); *Woldeab v. DeKalb Cnty Bd. of Ed.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

As discussed below, the Court finds a *sua sponte* dismissal to be necessary in this case. At the heart of Plaintiff's amended complaint is his frustration with various actions and decisions in a state court domestic relations case. However, a complaint under section 1983 is not a vehicle for an appeal of a state court decision. Claims seeking to undermine a prior state court judgment are barred by the *Rooker-Feldman*

doctrine. Additionally, five (5) of the Defendants are not state actors under section 1983, Judge Polson is immune from suit, and Plaintiff fails to state a claim for a violation of the Equal Protection Clause against the School Board, Superintendent Chambers, or the Niceville H.S. Defendants.

### A.  Plaintiff's Claims are Barred by *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine,[4] "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). In other words, federal courts may not exercise jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

"The doctrine is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012) (citation omitted). The doctrine "operates as a bar to federal court jurisdiction where the issue before the federal court was 'inextricably

---

[4] The doctrine arises from two cases: *Rooker v Fidelity Trust Co.*, 263 U.S. 413 (1923), in which the United States Supreme Court noted district courts only possess original jurisdiction and, thus, the United States Supreme Court is the only federal court that can hear an appeal of a state court judgment, and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), in which the Supreme Court later re-affirmed its earlier decision.

intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Id.* at 1262–63 (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)).

In determining whether the *Rooker-Feldman* doctrine applies, this Court considers whether: "(1) the party in federal court is the same as the party in the state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court judgments." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1310 n.1 (11th Cir. 2003) (quoting *Amos v. Glynn County Board of Tax Assessors*, 347 F. 3d 1249, 1265 (11th Cir. 2003)). The Eleventh Circuit has further defined the "inextricably intertwined" requirement as the situation when a "federal claim succeeds only to the extent that the state court wrongly decided the issues before." *Goodman ex rel Goodman v. Sipos*, 259 F.3d at 1332 (quoting *Siegel v LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc)).

Each of those elements is met here. Although Plaintiff does not provide a case number in the amended complaint, he alleges in April 2013, "[T]he clerk entered

Defendant Ledbetter's Motion for Default Judgment into the record." *Id.* at 8.  The Court takes judicial notice of an Okaloosa County Court case in which Judge Polson was assigned and Plaintiff and Defendant Horst were both parties: *Horst v. Bradley*, 2013 DR 000776, Okaloosa County, Florida Court (filed Feb. 14, 2013).  The state court entered a final judgment "on petition to domesticate and modify final decree of divorce and timesharing agreement" on November 1, 2013.  Although the case was subsequently closed and opened multiple times for various motions and hearings, the case was closed on September 10, 2019, and the District Court of Appeal denied a petition for writ of certiorari on September 21, 2020.  Thus, elements one and two of *Rooker-Feldman* are met—namely, Plaintiff was a party in a state court case, and the case resulted in a final judgment on the merits.

Additionally, elements three and four are also met because, to the extent Plaintiff takes issue with any decision or result in that state court case, Plaintiff had a reasonable opportunity to raise the claims he now asserts, and those claims were either adjudicated by the state court or inextricably intertwined with the state court's decisions.  Indeed, Plaintiff acknowledges he was allowed to make arguments, and he filed multiple motions relating to the very issues he attempts to relitigate in this federal action.  Quite simply, by requesting that this federal Court grant him relief based on conduct and decisions in a state court case, Plaintiff asks the Court to find that the state court wrongly decided the issues previously before it, which *Rooker-*

*Feldman* precludes this Court from doing. *Bator v. Shelton*, 2008 WL 11469574, at *2 (M.D. Fla. Nov. 26, 2008) ("Here, the Plaintiff alleges that Judge Steinbeck and DCF violated his daughter's constitutional rights by depriving her of her right to see her father. However, the Court has no jurisdiction over the state court's custody determinations.").

Moreover, the fact that Plaintiff is seeking monetary damages, rather than injunctive relief, does not make *Rooker-Feldman* any less applicable. In *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327 (11th Cir. 2001), the Eleventh Circuit addressed the applicability of the doctrine to claims of constitutional violations arising from dependency proceedings seeking damages rather than injunctive relief. In so doing, the court held *Rooker-Feldman* barred the plaintiff's claim that the defendant DCF employee's affidavit was false and that the state court proceedings violated plaintiffs' due process rights. *Id.* at 1331–1335.

The court determined that those claims "strike at the heart of the state court's proceedings and judgment" and that they succeed "only to the extent that the state court wrongly decided" the custody issue. *Id.* at 1334. Thus, the fact that monetary damages were sought rather than injunctive relief was irrelevant because "[t]he *Rooker-Feldman* doctrine is broad enough to bar all federal claims which were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court." *Id.* at 1333.

This case, in fact, is similar to *Sosnowski v. Xeureb*, which was also dismissed by this Court. 3:20-cv-5780-MCR-HTC (N.D. Fla. filed Aug. 26, 2020). Like the facts here, *Sosnowski* also involved claims brought by a father who claimed that a judge, his ex-wife, and others interfered with the custody of his minor child based on false representations made during various state court proceedings. *Id.* Adopting the undersigned's report and recommendation, this Court dismissed Sosnowski's claims *sua sponte* and upon screening based on *Rooker-Feldman* and the statute of limitations. *Id.* at ECF Docs. 20, 23.[5]

Similar cases have been addressed by other district courts, which have reached the same conclusion. *See e.g.*, *Sample v. Monterey Cnty. Family & Children Servs.*, 2009 WL 2485748, at *3 (N.D. Cal. 2009) ("Although [plaintiff] asks for monetary damages, she would only receive a damage award if this court determined that the Dependency Court's decisions pertaining to the custody of her children—including any review or authorization of defendants' actions—were in error. Accordingly, to evaluate her claims and grant her the relief she requests, this court would have no choice but to review and reject the state Dependency Court's decision . . . ."); *Grimes v. Alameda County Social Servs.*, 2011 WL 4948879, at *3 (N.D. Cal. Oct. 18, 2011) ("Even if plaintiff were to abandon his request for the return of his children and instead pursue only money damages, his claims still would require review of the

---

[5] That case is currently on appeal. USCA Case No.: 21-10293-A.

relevant state-court decisions.    Such review is barred.    Even though plaintiff nominally asserts claims for alleged civil rights violations, his pleading is de facto an improper collateral attack on unfavorable state-court rulings.").

Thus, this Court lacks jurisdiction to consider Plaintiff's claims relating to his state court case. *See Wood v. Orange County*, 715 F.2d 1543, 1546 (11th Cir. 1983), *cert. denied*, 467 U.S. 1210 (1984) ("[Because] federal review of state court decisions is entrusted solely to the Supreme Court, [the lower federal courts] may not decide federal issues that are raised in state proceedings and 'inextricably intertwined' with the state court's judgment.").

## B.    Plaintiff Seeks Relief Against Defendants Who are Not "State Actors" Under Section 1983

Even in the absence of *Rooker-Feldman*, the claims against Defendants Horst, Ledbetter, Stanley, Nixon, and AFS-USA are subject to dismissal because these defendants are not "state actors" under section 1983.    "A successful section 1983 action requires that the plaintiff show he was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1513 (11th Cir.1997).    "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state," *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir.2001), or when "the manner of his conduct . . . makes clear that he was asserting the authority granted him and not acting in the role of a private person."    *Williams v. United States*, 341 U.S. 97, 100 (1951).

Even assuming, *arguendo*, Plaintiff has sufficiently alleged the violation of a federal right, which he has not, Defendants Horst, Ledbetter, Stanley, and Nixon are private citizens, and AFS-USA is a private entity. Plaintiff has proffered no allegations to indicate any of these Defendants acted with the authority of the state. For a private individual to be held liable under section 1983, the person "must be jointly engaged with state officials in the prohibited conduct to constitute acting under color of state law." *McCrary v. Tobacco-Firm Army*, No. 1:10-CV-00117-MP-AK, 2010 WL 3219315, at *1 (N.D. Fla. Aug. 12, 2010). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

As to Defendants Horst, Stanley, and Nixon, however, Plaintiff alleges nothing more than a personal, familial dispute among private persons. As to Defendant Ledbetter, he is an attorney in private practice with no alleged connection to the state, and his representation of Defendant Horst in a state court case is insufficient grounds to label Defendant Ledbetter a state actor. *See, e.g.*, *Huls v. Llabona*, 2011 WL 3558194, at *2 (11th Cir. 2011) (holding that a private attorney representing a client in a private civil matter is not a state actor for purposes of

section 1983).  Similarly, Plaintiff makes no allegations indicating AFS-USA—as a private, nonprofit corporation—acts at the behest of the state. [6]

As such, Plaintiff's section 1983 claims against these Defendants should be dismissed.

### C.    Plaintiff Seeks Relief from an Immune Defendant

Likewise, even if *Rooker-Feldman* did not bar Plaintiff's claims relating to his state court case, Plaintiff's claims against Judge Polson should be dismissed because Judge Polson is immune from liability under the doctrine of judicial immunity.

Judicial immunity applies to all judicial acts.  "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."  *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  "In other words, we look to the particular act's relation to a general function normally performed by a judge[.]"  *Mireles v. Waco*, 502 U.S. 9, 13 (1991).

---

[6] Plaintiff only makes allegations as to "AFS-USA" in the complaint; however, in the "Parties" section, Plaintiff identifies AFS-USA as "AFS-USA, Inc. Tara Boyce Hofman, CEO, Official," suing the party in an individual capacity. *Id.* at 4.  Regardless, Tara Boyce Hofman is a private person and not a state actor.

Immunity may be overcome only (1) where the judge has not acted within his judicial capacity, or (2) where the judge's actions, though judicial in nature, are taken in the complete absence of all jurisdiction. *See id.* at 11–12.

An act is done in "clear absence of all jurisdiction," for judicial immunity purposes, if the matter upon which the judge acted is clearly outside the subject-matter jurisdiction of the court over which he presides. *See Dykes v. Hosemann*, 776 F.2d 942, 946–48 (11th Cir. 1985). However, a judge is not deprived of absolute immunity from liability for damages "because the action he took was in error, was done maliciously, or was in excess of his authority[.]" *Stump*, 435 U.S. at 356; *see also Mireles*, 502 U.S. at 11 ("[J]udicial immunity is not overcome by allegations of bad faith or malice.").

There can be no doubt that Plaintiff's allegations against Judge Polson arise from the actions taken by Judge Polson in her judicial capacity. As stated above, Plaintiff's allegations against Judge Polson are related solely to her decisions in Plaintiff's state court case. As such, Judge Polson is immune from liability.

### D.   Plaintiff Fails to State a Claim Under the Equal Protection Clause of the Fourteenth Amendment

The *Rooker-Feldman* doctrine also bars Plaintiff's claim under the Equal Protection Clause of the Fourteenth Amendment, but even if it did not, such a claim wholly fails on its merits. As an initial matter, Plaintiff's Equal Protection Clause claim against Defendants Chambers, Marello, Wooton, Murphy, and the School

Board is barred by the statute of limitations because it was brought more than four (4) years after the most recent incident involving an alleged deprivation.

"Claims brought pursuant to 42 U.S.C. § 1983 are subject to the statute of limitations period governing personal injury actions in the state where the action is brought." *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1263 (11th Cir. 2014) (citing *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008)). The Eleventh Circuit has "held that the four-year statute of limitations under Fla. Stat. § 95.11(3) applies to § 1983 claims arising in Florida." *Ellison v. Lester*, 275 F. App'x 900, 901–902 (11th Cir. 2008) (citing *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003)).

"[T]he accrual date of a §1983 claim, from which the statute of limitations begins to run, is determined by federal law." *Tillman v. Orange Cty., Fla.*, 519 F. App'x 632, 635 (11th Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). "The statute of limitations on a section 1983 claim begins to run when 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Van Poyck v. McCollum*, 646 F.3d 865, 867 (11th Cir. 2011) (citing *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)). Thus, an action under section 1983 does not accrue until: (1) "plaintiff knows or has reason to know that he has been injured"; and (2) "plaintiff

is aware or should have been aware who has inflicted the injury." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987) (citations omitted).

As summarized above, Plaintiff complains of events that took place in 2016. As alleged by Plaintiff, his constitutional rights were violated when Defendants Murphy, Wooton, and Marello—on August 24, 2016, December 22, 2016, and December 27, 2016, respectively—declined to intervene in Plaintiff's dispute with his daughter, citing district policy. Thus, Plaintiff's claim accrued, at the latest, on December 27, 2016. *See Allen v. Dekalb Cty. Jail's Med. Providers/Private Contractors*, 632 F. App'x 593, 594 (11th Cir. 2016) (holding plaintiff "did not need to be aware of the extent of his injury for the statute of limitations to begin running"). Plaintiff, however, did not file this action until March 9, 2021. Thus, Plaintiff's claim is time-barred.

Moreover, even if Plaintiff's claim were not barred by the statute of limitations, he has failed to state a claim under the Equal Protection Clause. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Generally, equal protection violations arise when the state classifies and treats "some discrete

and identifiable group of citizens differently from other groups." *See Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012).

To state an equal protection claim, Plaintiff must therefore show that the state treated him differently than other similarly situated persons based on his or her membership in an identifiable group or class of persons. *See id.*; *see also Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). In addition, "proof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim." *Corey*, 682 F.3d at 1297 (citing *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995)).

Here, Plaintiff alleges he is "a member of an identifiable class of divorced male parents of minor children and was subjected to disparate treatment by reason of a policy" administered by Defendants. ECF Doc. 5 at 21. Plaintiff mentions only a "district policy," without additional detail, in his amended complaint; however, Plaintiff provides more explanation in the original complaint, noting the policy at issue prohibits "teachers and staff from 'becoming involved in custody matters,'" ECF Doc. 1 at 25.[7] According to Plaintiff, he and other members of his "class" were "intentionally treated differently than married male parents . . . ." Specifically, "[i]f a married parent male or female asked [Okaloosa County School District] staff or

---

[7] Although the amended complaint is the operative pleading, the undersigned finds that reading both complaints together is necessary to understand Plaintiff's allegations. *See Little v. City of New York*, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014).

faculty to speak with a child about a behavior problem[,] there is no policy to prevent it," yet the Defendants "refused the same services to Plaintiff . . . ." *Id.*

Based on these allegations, Plaintiff has failed to make a showing of a violation of the Equal Protection Clause. Namely, even assuming Plaintiff has alleged a proper, identifiable class of divorced, male parents, Plaintiff has not sufficiently alleged the existence of a policy that classifies and treats Plaintiff differently from other similarly situated persons based on Plaintiff's membership in that class. Indeed, although Plaintiff repeatedly mentions a "district policy," he does not cite any specific School District policy.

Regardless, the "policy" he complains of is simply a reference by the defendant school employees that the school does not interfere with custody matters. Even if such was sufficient to describe a policy, that policy does not treat any group of parents differently. Noticeably absent in Plaintiff's description of the allegedly unconstitutional policy is any mention of divorced male parents. To the contrary, the policy applies to all *custody matters*, regardless of the parents' marital status. In other words, whether the parents are separated, divorced, or unwed does not matter—the policy prohibits staff involvement in *all* custody matters.

As such, Plaintiff has not shown that any policy classified him based on his status as a divorced, male father and treated him differently because of it.[8]  Plaintiff thus fails to state a claim under the Equal Protection Clause.

## III.    PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*

Also pending before the Court is Plaintiff's amended motion for leave to proceed *in forma pauperis*.  ECF Doc. 6.  Such motions are governed by 28 U.S.C § 1915, which provides the following instruction:

> [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1); *see Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (affirming the application of section 1915's provisions to a non-prisoner's complaint).

"In order to authorize a litigant to proceed *in forma pauperis*, the court must make two determinations: first, whether the litigant is unable to pay the costs of commencing this action; and second, whether the action is frivolous or malicious." *Boubonis v. Chater*, 957 F. Supp. 1071, 1072 (E.D. Wis. 1997) (citing 28 U.S.C.

---

[8] Because Plaintiff failed to make this threshold showing, Plaintiff also fails to establish any discriminatory intent or purpose.

§ 1915(a) & (e)(2)(B)(i)).  Specifically, under section 1915(e)(2)(B), the Court shall dismiss any claim filed under the *in forma pauperis* statute, which "fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

Thus, whether Plaintiff's amended motion to proceed *in forma pauperis* is sufficient to be granted is irrelevant because Plaintiff's inability to pay the filing fee does not convert his frivolous complaint into a viable action.  As outlined above, Plaintiff's complaint fails to state a cognizable claim, even under the most liberal reading.  When a plaintiff cannot meet the second element of the *in forma pauperis* equation—namely, by showing that the complaint is neither frivolous nor malicious—the District Court "need not reach a determination on the issue of whether [the plaintiff] is unable to pay the costs of commencing this action."  *See Young v. Marshall*, No. CV 20-0495-JB-MU, 2020 WL 7701517, at *2 (S.D. Ala. Dec. 4, 2020), *report and recommendation adopted,* No. CV 20-0495-JB-MU, 2020 WL 7700580 (S.D. Ala. Dec. 28, 2020) (declining to review Plaintiff's motion to proceed *in forma pauperis* because Plaintiff lacked standing to bring her asserted claims).

As set forth above, Plaintiff's complaint is frivolous, and Plaintiff's motion to proceed *in forma pauperis* is thus DENIED.

## IV.   CONCLUSION

Generally, "a district court must grant a plaintiff at least one opportunity to amend [his] claims before dismissing them if it appears a more carefully drafted complaint might state a claim upon which relief can be granted." *Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003).  However, an opportunity to amend is not necessary when the defects in the complaint are incurable and an amendment would be futile.  *Rance v. Winn*, 287 F. App'x 840, 841 (11th Cir. 2008) ("[D]istrict courts need not permit amendment where it would be futile to do so.").  Instead, a district court may *sua sponte* "dismiss an action that is 'so patently lacking in merit as to be frivolous.'"  *Guthrie v. U.S. Gov't*, 618 Fed.Appx. 612, 617 (11th Cir. 2015) (quoting *Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 & n.3 (11th Cir. 1983)).  "A claim is frivolous if it is without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing *Battle v. Central State Hospital*, 898 F.2d 126, 129 (11th Cir. 1990)).

Moreover, frivolous claims may be dismissed without giving notice to a party and even prior to service of process.  *Davis v. Kvalheim*, 261 F. App'x 231, 234 (11th Cir. 2008).  Here, *sua sponte* dismissal is appropriate because this report and recommendation will serve as fair notice to Plaintiff of the Court's intent to dismiss the case.  *See Glover v. Williams*, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation

constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

Accordingly, it is ORDERED:

1.      Plaintiff's amended motion to proceed *in forma pauperis* (ECF Doc. 6) is DENIED.

Additionally, it is respectfully RECOMMENDED:

1.      This case be DISMISSED as frivolous.

2.      The clerk be directed to close the file.

At Pensacola, Florida this 28th day of April, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.